# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION
## CIVIL ACTION NO. 3:17-CV-167-RGJ-CHL

ROBERT B. RHODES,                                                      Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,                        Defendant.

### REPORT AND RECOMMENDATION

Before the Court is the Complaint (DN 1) of Plaintiff, Robert B. Rhodes ("Plaintiff"). In his Complaint, Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). *See* 42 U.S.C. § 405(g) (2017) ("Any individual, after any final decision of the Commissioner of Social Security . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision. . . ."). Plaintiff filed a Fact and Law Summary (DN 17). The Commissioner also filed a Fact and Law Summary (DN 18). Therefore, this matter is ripe for review.

This matter was referred to the undersigned for the preparation of a report and recommendation. For the reasons set forth below, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**.

## I.      FINDINGS OF FACT

Plaintiff filed an application for disability insurance benefits on March 16, 2015. (DN 12-5, at PageID # 231-34.) On May 25, 2016, Administrative Law Judge Steven Collins (the "ALJ") conducted a hearing on Plaintiff's application. (DN 12-2, at PageID # 87-131.) In a decision dated August 31, 2016, the ALJ engaged in the five-step evaluation process promulgated by the

Commissioner to determine whether an individual is disabled.  In doing so, the ALJ made these findings:

> 1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.  (*Id.* at 67.)

> 2.      The claimant has not engaged in substantial gainful activity since February 1, 2015, the alleged onset date.  (*Id.*)

> 3.      The claimant has the following severe impairments: PTSD; double vision; asthma; sleep apnea; degenerative disc disease; arthritis; obesity; depression; anxiety.  (*Id.* at 68.)

> 4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404. Subpart P, Appendix 1.  (*Id.* at 70.)

> 5.      The claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 C.F.R. 404.1567(b).  The claimant can occasionally lift and carry up to 20 pounds and frequently lift and carry up to 10 pounds; can sit about 6 hours in an 8-hour workday; stand and/or walk about 6 hours in an 8-hour workday, with normal breaks.  The claimant can occasionally climb ramps and stairs but should never climb ladders, ropes, or scaffolds; can frequently balance; occasionally stoop, kneel, crouch, or crawl; and can have occasional exposure to pulmonary irritants such as fumes, dusts, odors, gases, or poor ventilation  and no exposure to hazards such as dangerous moving machinery or unprotected heights.  The claimant is limited to occasional overhead reaching.  The work is limited to simple routine and some detailed but not complex tasks involving few if any workplaces changes with no public contact and only occasional contact with supervisors and coworkers.  (*Id.* at 72.)

> 6.      The claimant is unable to perform any past relevant work.  (*Id.* at 80.)

> 7.      The claimant was born on January 25, 1969 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (*Id.*)

> 8.      The claimant has at least a high school education and is able to communicate in English.  (*Id.*)

> 9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills.  (*Id.*)

      10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  (*Id.*)

      11.     The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2015, through the date of this decision.  (*Id.* at 82.)

Plaintiff requested an appeal to the Appeals Council (*Id.* at 61), which denied her request for review on January 11, 2017.  (*Id.* at 48-50.)  At that point, the ALJ's decision became the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 422.210(a) (2018); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision).  Pursuant to 20 C.F.R. § 422.210(c), Plaintiff is presumed to have received that decision five days later, on January 16, 2017.  Accordingly, Plaintiff timely filed this action on March 16, 2017.  *See* 42 U.S.C. § 405(g).

## II.    CONCLUSIONS OF LAW

The Social Security Act authorizes payments of disability insurance benefits to persons with disabilities.  *See* 42 U.S.C. § 401 – 434 (2017).  Specifically, anyone who is insured for disability insurance benefits, has not attained retirement age, has filed an application for benefits, and is under a disability is entitled to benefits. 42 U.S.C. § 423(a)(1); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a) (2018).

### A.    Standard of Review

The Court may review the final decision of the Commissioner, but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the

Commissioner applied the correct legal standards.  42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla;" it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1994) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way").  However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record.  *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

### B.    Five-Step Sequential Evaluation Process

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim.  20 C.F.R. §§ 404.1520, 416.920 (2018).  In summary, the evaluation process proceeds as follows:

(1)    Is the claimant involved in substantial gainful activity?  If the answer is "yes," the claimant is not disabled.  If the answer is "no," proceed to the next step.

(2)    Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[1] and significantly limits his or her physical or mental ability to do basic work activities?  If the answer is "no," the claimant is not disabled.  If the answer is "yes," proceed to the next step.

(3)    Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P,

---

[1] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve (12) months.  20 C.F.R. § 404.1509 (2018).

4

Appendix 1?  If the answer is "yes," the claimant is disabled.  If the answer is "no," proceed to the next step.

(4)    Does the claimant have the residual function capacity ("RFC") to return to his or her past relevant work?  If the answer is "yes," then the claimant is not disabled.  If the answer is "no," proceed to the next step.

(5)    Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work?  If the answer is "yes," the claimant is not disabled.  If the answer is "no," the claimant is disabled.

The claimant bears the burden of proof with respect to steps one through four.  *Walters*, 127 F.3d at 529.  However, the burden shifts to the Commissioner at  step five to prove that other work is available that the claimant is capable of performing.  *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).  The claimant always retains the burden of proving lack of RFC. *Id.*; *Herr v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

## C.    Plaintiff's Contentions

While Plaintiff's Fact and Law Summary did not specify by number which of the ALJ's Findings he contests, he appears to contest numerical findings three, four, and five.  Plaintiff made six claims of error as to these findings.  The undersigned will address each below.

### 1.    Opinion Weight and Mental RFC

Plaintiff argued that the ALJ's RFC determination is unsupported as to those limitations derived from his mental condition ("mental RFC").  (DN 17-1, at PageID # 934-30.)  He also argued that the ALJ erred in his consideration of the opinions of consultative examiner Kenneth Gruenfeld, Psy. D. ("Dr. Gruenfeld") and the Mental RFC formulated by state agency physicians Majorie Kuker, Ph.D. ("Dr. Kuker"), and Ilze Sillers, Ph.D. ("Dr. Sillers") (together with Dr. Kuker, the "state agency opinions").  (*Id*. at 934-36.)

In his determination of Plaintiff's mental RFC, the ALJ limited Plaintiff to "simple routine and some detailed but not complex tasks involving few if any workplace changes with no public contact and only occasional  contact with supervisors and coworkers."  (DN 12-2, at PageID # 72.) Plaintiff challenged this determination as unsupported by substantial evidence, arguing that "[t]he evidence in the record supports greater deficits in concentration, persistence and pace than the ALJ's RFC."  (DN 17-1, at PageID # 938.)  In support of his determination of Plaintiff's mental RFC, the ALJ noted that Plaintiff's treatment for his mental impairments "consisted primarily of routine office visits for medication management and some therapy."  (DN 12-2, at PageID # 76.) The ALJ cited exam notes that documented normal speech, "linear, logical, and goal directed" thought process, and intact higher cortical functions.  (*Id.* at 77.)  The ALJ stated that "[w]hile the claimant has alleged memory and focus issues, the exams consistently document his recent and remote memory are intact and his attention is normal."  (*Id.*)  The ALJ further concluded that "[t]he claimant's reported activities from the record do not support the alleged severity of his symptoms and limitations."  (*Id.* at 78.)  The ALJ noted that Plaintiff was "able to independently perform his own activities of daily living," including preparing his own meals, and "can manage household finances."  (*Id.* at 77.)

Plaintiff argued that other evidence in the record, including his Veterans Affairs disability being based on a thirty percent rating for PTSD and the fact that during the relevant timeframe he sought treatment for anxiety, depression, and PTSD, contradict the ALJ's RFC determination. (DN 17-1, at PageID # 938.)  However, an ALJ need not address every piece of medical evidence individually for his decision to nonetheless be supported by substantial evidence. *Thacker v. Comm'r of Soc. Sec.*, 99 Fed. App'x 661, 665 (6th Cir. 2004).  Further, the  undersigned must consider the ALJ's decision as a whole and is not permitted to cherry-pick evidence from the

record that might support the conclusion opposite from the one reached by the Commissioner. *See Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). Because the ALJ cited to relevant evidence in the record that was adequate to support his conclusion, the undersigned finds the same is supported by substantial evidence. *See Smith*, 893 F.2d at 108 (holding that if the Commissioner's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way").

Plaintiff also asserted that the ALJ assigned improper weight to the medical source opinions in the record in making his determination of Plaintiff's mental RFC. In making a determination of a claimant's RFC, the ALJ is required to consider the record as a whole, including the claimant's testimony and opinions from the claimant's medical sources. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a)(1) (2018). The source of a medical opinion dictates the process by which the ALJ gives it weight. *Gayheart*, 710 F.3d at 376. Generally, the ALJ is required to give more weight to a source who has examined the claimant than one who has not and more weight to a source who regularly treats that claimant than one who does not. *Id.* at 375. In affording weight to an examining source, the ALJ is required to "consider factors including the length and nature of the treatment relationship, the evidence that the physician offered in support of her opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in her specialty." *Ealy v. Comm'r*, 594 F.3d 504, 514 (6th Cir. 2010). However, "[a]ny record opinion . . . may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record." *Norris v. Comm'r*, 461 Fed. App'x 433, at 439 (6th Cir. 2012) (citing 20 C.F.R. §§ 404.1527, 416.927 and *Ealy*, 594 F.3d at 514).

The Plaintiff challenged the ALJ's decision to afford only partial weight to the opinion of Dr. Gruenfeld, who conducted the consultative psychological examination of Plaintiff. (DN 17-1,

at PageID # 935-36.)  The ALJ credited part of Dr. Gruenfeld's opinion regarding Plaintiff's "capacity to complete simple and multi-step job tasks" as being "consistent with the objective evidence outlined" in the ALJ's decision.  (DN 12-2, at PageID # 78-79.)  However, the ALJ then indicated that the "remainder of the opinion [wa]s vague and relie[d] heavily on the claimant's subjective complaints" and gave the opinion only partial weight.  (*Id.* at 79.)  As an example, the ALJ cited to Dr. Gruenfeld's finding that "the claimant has 'problems working with others' and 'may be able to manage a low stress job' where he 'works alone,'" noting that this limitation appeared to be based on Plaintiff's complaints during the exam and not on "actual exam findings." (*Id.*)  The ALJ further found this level of limitation to be inconsistent with the "longitudinal treating record."  (*Id.*)

Plaintiff argued that "there is nothing vague about a statement that there is a question whether a claimant is capable of a low stress job but he would need one where he worked alone." (DN 17-1, at PageID # 935.)  Plaintiff further argued that mental health professionals necessarily rely upon subjective complaints in forming their opinions.  (*Id.*)  Finally, Plaintiff argued that the limitation regarding his need to work alone did have support in the record, citing to hospital records documenting his "avoidance of people and public places," "difficulty . . . getting along with other people," "history of isolation," and inability to "deal with civilians."  (DN 12-7 at 373, 414, 421.) However, Plaintiff's citations are only to records documenting his complaints of those items, not a physician or psychologist's diagnosis or adoption of those statements.  Because Dr. Gruenfeld was an examining source, not a treating source, the ALJ was only required to give his opinion more weight than a nonexamining source and to evaluate it according to the factors listed above, including how consistent the opinion was with the record as a whole.[2]  (*See* DN 12-7, at PageID #

---

[2] While the Plaintiff argued that the ALJ did not give "good reasons" for reducing the weight he gave Dr. Gruenfeld's opinion (DN 17-1, at PageID # 936), this requirement applies only when an ALJ gives less than controlling weight to

394 (noting that Plaintiff was evaluated on June 15, 2015 in-person at Dr. Gruenfeld's office).)

Here, the ALJ specifically noted that he found portions of Dr. Gruenfeld's opinion inconsistent

with the record as a whole. Accordingly, the ALJ properly followed agency rules regarding the

weight he ascribed to Dr. Gruenfeld's opinion, and the undersigned finds no error regarding the

same.

Plaintiff also challenged the ALJ's treatment of the state agency opinions. (DN 17-1, at

PageID # 936.) Specifically, he argued that state agency opinions actually pronounced a more

restrictive mental RFC than that imposed by the ALJ, despite the ALJ's claims to the contrary.

(*Id.*) He argued that the ALJ erred in providing "no reason why the State agency doctor's

assessment is not adopted verbatim." (*Id.* at 938.) However, the determination of a claimant's

RFC is an issue expressly reserved to the Commissioner by regulation. 20 C.F.R. § 404.1527(d)(2)

(emphasis added) ("Although we consider opinions from medical sources on issues such as . . .

*your residual functional capacity* . . . , the final responsibility for deciding th[is] issue[ ] is reserved

to the Commissioner.") Therefore, regardless of the weight assigned to the opinion, an ALJ is not

required to adopt the same verbatim. *See Reeves v. Comm'r of Soc. Sec.*, 618 Fed. App'x 267, 275

(6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement

that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt

the state agency psychologist's limitations wholesale."). The undersigned finds no error in the

ALJ's refusal to adopt verbatim the mental RFC determination from the state agency opinions.

---

the opinion of a treating source. *See Ealy*, 594 F.3d at 514 ("[A]n ALJ is procedurally required to 'give *good reasons* in [his] notice of determination or decision for the weight [he gave the claimant's] treating source's opinion.' However, this requirement only applies to treating sources." (emphasis added)). Dr. Gruenfeld was an examining source, not a treating source, and Plaintiff makes no argument otherwise. Accordingly, Plaintiff's argument regarding the ALJ's failure to give "good reasons" is not well-taken.

As with Dr. Gruenfeld's opinion above, the ALJ was merely required to consider the state agency opinions and assign them a weight consistent with the prescribed factors. The ALJ assigned the state agency psychological consultants' examinations "some weight." (DN 12-2, at PageID # 79.) The ALJ cited with approval the state agency conclusions that Plaintiff had "no more than moderate limits in social function and concentration, persistence or pace," finding this description consistent with the record of "routine and conservative treatment and largely normal mental status exams." (*Id.*) The ALJ then stated that the "essence of the state agency mental assessment [was] reflected" in the ALJ's RFC determination. (*Id.*) Plaintiff disputed this characterization, citing to what he described as a more restrictive RFC offered by Dr. Sillers.[3] (DN 17-1, at PageID # 936.) In his assessment of Plaintiff's mental RFC, Dr. Sillers found Plaintiff not significantly limited in his ability to carry out very short and simple instructions, moderately limited in his ability to carry out detailed instructions, and not significantly limited in his ability to sustain an ordinary routine without special supervision. (DN 12-3, at PageID # 157.) Dr. Sillers also found Plaintiff moderately limited in his ability to complete a normal workday/workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (*Id.* at 158.) Dr. Sillers stated that Plaintiff could "complete simple and complex tasks," could "work in proximity with co-workers," and that when his symptoms weren't active, Plaintiff could "relate superficially with individuals in the general public for short periods of time" in certain situations. (*Id.*) This determination is consistent overall with the ALJ's determination that Plaintiff was limited to "simple routine and

---

[3] Though Plaintiff's brief referred specifically to Dr. Sillers's determination of Plaintiff's mental RFC, the undersigned notes that there is no difference between the limitations imposed by Dr. Kuker and those imposed by Dr. Sillers. *Compare* DN 12-3, at PageID # 142-44 (Dr. Kuker's mental RFC determination), *with id.* at 157-59 (Dr. Sillers's mental RFC determination). Indeed, Dr. Sillers noted that he affirmed Dr. Kuker's initial mental RFC finding. (*Id.* at 159.)

some detailed but not complex tasks involving few if any workplace changes with no public contact and only occasional contact with supervisors and coworkers." (DN 12-2, at PageID # 72.) The undersigned finds no error in the weight the ALJ ascribed to the state agency opinions.

### 2.    Veterans Affairs Disability Rating

Plaintiff contested the weight assigned by the ALJ to his 100% disability rating from Veterans Affairs (the "VA"), arguing that the ALJ failed to offer "good reasons for affording the rating little weight." (DN 17-1, at PageID # 940.)  In Finding No. 5, the ALJ recounted the Plaintiff's testimony regarding his VA disability rating and stated that based on his review of the records, Plaintiff's VA disability rating derived from "conditions including sleep apnea, migraines, PTSD, flat feet, disc syndrome, knee condition, degenerative arthritis, limited motion of the ankle, and limited flexion knee/knee condition." (DN 12-2, at PageID # 78.)  However, the ALJ stated that he gave "little weight" to this determination.  (*Id.*)  The ALJ further noted that the "records provide a broad and conclusory statement of disability that is based on VA criteria, which is not comparable to the SSA rules and regulations . . . ."  (*Id.*)  The ALJ also incorporated his other analysis regarding Plaintiff's impairments.  (*Id.*)

While, the ALJ was required to consider the VA's disability determination in making his determination, the VA's disability determination was not binding on him.  20 C.F.R. § 404.1504 (2015) (noting that a disability determination made by another governmental agency is based on its rules and is not binding on the Social Security Administration); *Ritchie v. Comm'r of Soc. Sec.*, 540 Fed. App'x 508, 511 (6th Cir. 2013) (holding that a "disability rating by the Veterans A[ffairs] is only one factor to be considered in making a social security disability finding").  Here, the ALJ considered Plaintiff's rating and gave it little weight, in part relying on the well-established fact that the VA's criteria for establishing disability are different from that applied by the Social

Security Administration ("SSA").  (DN 12-2, at PageID # 78.)  Indeed, the Sixth Circuit has explicitly recognized the differences in the two systems.  *See Deloge v. Comm'r of Soc. Sec.*, 540 Fed. App'x 517, 519 (6th Cir. 2013) ("The VA relies on independent and distinct criteria to assess disability . . . .").

Plaintiff argued that the ALJ "did not do a properly [sic] analysis of the two systems" in making his conclusion, relying on the Sixth Circuit's opinion in *LaRiccia v. Comm'r of Soc. Sec.*, 549 Fed. App'x 377, 388 (6th Cir. 2013).  (DN 17-1, at PageID # 940.)  The undersigned finds that *LaRiccia* is distinguishable from the instant case because the ALJ's decision in *LaRiccia* was based on "inaccurate" statements about the nature of the VA disability determination as compared to the SSA regulations.  *LaRiccia*, 549 Fed. App'x at 388 ("Although the ALJ provided reasons for the weight afforded the VA disability determination, . . . we cannot credit the reasons because they do no accurately reflect the approaches taken in the two systems.").  In Plaintiff's case, the ALJ properly based his decision to give little weight to the VA disability determination on the well-established and accurate fact that the VA's criteria for establishing disability and the SSA's criteria are different.  Accordingly, the undersigned finds no error in the weight assigned by the ALJ to Plaintiff's VA disability determination.

### 3.    Evidence of Migraines

Plaintiff claimed the ALJ's analysis of his migraines and headaches was not supported by substantial evidence.  In Finding No. 3, the ALJ found that "the objective evidence of record does not support that claimant's headaches occur at a severity or frequency that would be considered severe."  (DN 12-2, at PageID # 68.)  The ALJ noted that while the claimant has complained to providers of migraines and himself stated that "he lies down for [two] hours a day because of migraines," "there is no objective evidence in the record that the claimant's headaches cause

significant limitations in his ability to perform basic work activities . . . ." (*Id.* at 68-69.)  Plaintiff claimed the ALJ erred in finding that Plaintiff's headaches were non-severe at Step Two and at failing to consider the headaches in his finding of Plaintiff's RFC.  (DN 17-1, at PageID # 941.)

At Step Two of the ALJ's evaluation, it is the claimant's burden to demonstrate that he or she has a "severe" impairment.  20 C.F.R. § 404.1520; *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam).  To satisfy this burden, the claimant must show he suffers from a "medically determinable" physical or mental condition that satisfies the duration requirement and "significantly limits" his ability to do one or more basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii); (c).  If the ALJ establishes that the claimant suffers from a severe impairment, the ALJ is required to continue to the next step in the evaluation.  *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).  However, "[o]nce the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error."  *Hobbs v. Comm'r of Soc. Sec.*, No. 1:14-CV-121, 2015 WL 4247160, at *5 (W.D. Mich. July 13, 2015) (citing *Maziarz*, 837 F.2d at 244); *see also Nejat v. Comm'r of Soc. Sec.*, 359 Fed. App'x 574, 577 (6th Cir. 2009).  This is because the determination that an impairment is non-severe does not prevent the ALJ from considering it in his or her assessment of a claimant's RFC.  *See* 20 C.F.R. § 404.1545(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity.")  "The fact that some of [claimant]'s impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue*, 266 Fed. App'x 451, 457 (6th Cir. 2008).

Here, the ALJ found at Step 2 that Plaintiff had several severe impairments, including PTSD, double vision, asthma, sleep apnea, degenerative disc disease, arthritis, obesity, depression, and anxiety.  (DN 12-2, at PageID # 68.)  As the ALJ found Plaintiff had at least one severe impairment and continued to the remaining portion of the evaluation, the ALJ did not commit reversible error in failing to deem Plaintiff's headaches a severe impairment.

Plaintiff also claims that the ALJ erred by failing to consider Plaintiff's headaches in comorbidity with his other impairments in determining Plaintiff's RFC.  (DN 17-1, at PageID # 941.)  In determining a claimant's RFC, the ALJ is required to consider all medically determinable impairments, severe and non-severe, and take into account all relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(2)-(3); SSR 96-8p, 61 Fed. Reg. 34474, at 34477 (July 2, 1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").  While Plaintiff is correct that the ALJ does not extensively discuss Plaintiff's headaches in Finding No. 5 where the ALJ determined Plaintiff's RFC, having reviewed the ALJ's decision as a whole, the undersigned finds that the ALJ made sufficient factual findings elsewhere in his opinion to support his RFC finding and to facilitate meaningful judicial review.  *See Wilson v. Colvin*, No. 3:13-cv-710-TAV-HBG, 2015 WL 1396736, at *3-4 (E.D. Tenn. March 26, 2015) (noting that the Sixth Circuit has declined to require remand where the ALJ makes sufficient factual findings elsewhere in the decision to support minimal reasoning at step three).

In Finding No. 5, the ALJ recited that Plaintiff "stated he lies down for 2 hours a day because of migraines and/or pain."  (DN 12-2, at PageID # 74.)  However, the ALJ then noted that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the records

for the reasons explained in this decision." (*Id.*)  Elsewhere in his decision, the ALJ expounded

on Plaintiff's complaints of headaches and his description of the limitations those headaches place

upon him.  (*Id.* at 68.)  The ALJ noted that an MRI of Plaintiff's brain taken a few months after

the alleged onset of Plaintiff's headaches was "unremarkable but for findings consistent with acute

sinusitis." (*Id.*)  The ALJ then stated

> The level of treatment received has been conservative in nature.  However, in
> general, the objective evidence of record fails to support the claimant's allegations
> regarding the severity and frequency of his headaches.  There is no objective
> evidence in the record that the claimant's headaches cause significant limitations in
> his ability to perform basic work activities . . . .

(*Id.* at 68-69.)  The ALJ cited to hospital records and the MRI results previously referenced in

support of his conclusion.  (*Id.* at 69.)  Though the ALJ did not include this analysis in the section

of his decision regarding Plaintiff's RFC, the inclusion of it in a separate part of the opinion

provides a sufficient basis from which the undersigned can conclude that the absence of limitations

related to Plaintiff's headaches in the ALJ's RFC findings is due to the ALJ's rejection of the

argument that Plaintiff's headaches limited him to the extent he reported.   Therefore, the

undersigned finds that the ALJ's failure to include a specific discussion of Plaintiff's headaches in

Finding No. 5 does not constitute reversible error.

Finally, Plaintiff argued that the ALJ's findings regarding his headaches were not

supported by substantial evidence.  Plaintiff argued that the record supports that he had been

diagnosed with migraines and that his providers tried a number of medications to control the same.

(DN 17-1, at PageID # 941.)  The records to which Plaintiff cites in support of his argument are

all instances in which a physician has noted that Plaintiff reported headaches, but Plaintiff does

not point to any record substantiating any limitations on his ability to work.  Instead, Plaintiff

merely alleges that "the ALJ has substituted his own lay opinion for an entire line of evidence

supportive of significant migraine headaches." (DN 17-1). However, the undersigned's review is limited to whether the Commissioner's decision is supported by substantial evidence, regardless of whether "substantial evidence would have supported the opposite conclusion." *Gayheart*, 710 F.3d at 374. Here, the undersigned finds that the ALJ's decision was supported by sufficient evidence in the record. Accordingly, the undersigned finds no error in the ALJ's assessment of Plaintiff's headaches.

### 4. "Playing Doctor" and Plaintiff's Vision Issues

Plaintiff argued that the ALJ improperly "played doctor" with respect to Plaintiff's vision issues. (DN 17-1, at PageID # 943.) In his determination of Plaintiff's RFC, the ALJ stated that "the claimant's double vision would not prevent frequent balancing . . . ." (DN 12-2, at PageID # 75.) Plaintiff argued that the ALJ "played doctor" because the "ALJ d[id] not point to any specific evidence or opinion evidence to support the RFC." (DN 17-1, at PageID # 943.)

An ALJ is not bound to accept the opinion or theory of any medical expert, "but may weigh the evidence and draw his own inferences." *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. App'x 181, 194 (6th Cir. 2009) (quoting *McCain v. Dir., OWCP*, 58 Fed. App'x 184, 193 (6th Cir. 2003)). Even so, the ALJ cannot "substitute his own medical judgment for that of the treating physician," *id.* (citing *Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006)), and may not make her own independent medical findings. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (stating "ALJs must not succumb to the temptation to play doctor") (citations omitted). While a "written evaluation of every piece of evidence" is not required, the ALJ must "sufficiently articulate his assessment of the evidence" to assure that he considered the important evidence and to enable the Court to trace a path of his reasoning. *Id.* at 971 (quoting *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam)).

Here, the ALJ summarized the medical evidence with respect to Plaintiff's double vision and included in his RFC limitations related to the impairment. The ALJ first discussed the results of Plaintiff's eye exams from 2014, 2015, and 2016. (DN 12-2, at PageID # 75.) The ALJ then noted that Plaintiff had previously complained of double vision and received prescription glasses to assist with diplopia (double vision). (*Id.*) However, the ALJ cited that Plaintiff described his double vision to his doctor as "manageable." (*Id.*) The ALJ then found that based on the record as a whole, Plaintiff could engage in "frequent balancing," but should have "no exposure to hazards and no climber of ladders ropes, and scaffolds." (*Id.* at 75-76.) Plaintiff argued that the record supports that his double vision was not correctible with glasses (DN 12-7, at PageID # 728), but the Commissioner noted that the next page of the record cited by Plaintiff stated that Plaintiff's diagnosis of diplopia had "no significant effects" on his usual occupation and only moderate effects on his driving (*Id.* at 729.) Plaintiff cited to no other medical evidence that greater work restrictions than those imposed by the ALJ were necessary. Because the ALJ discussed Plaintiff's subjective complaints and the objective medical evidence in the record, the ALJ did not "play doctor" or inappropriately draw his on inferences on the medical data. Accordingly, the undersigned finds no error in the ALJ's treatment of Plaintiff's double vision.

### 5. Plaintiff's Statements Regarding Pain

Plaintiff alleged that the ALJ improperly evaluated his reports of pain. (DN 17-1, at PageID # 944-45.) Specifically, Plaintiff argued that the ALJ erred in his assessment of Plaintiff's arthritis, degenerative disc disease, PTSD, depression, and anxiety in setting Plaintiff's RFC. (DN 17-1, at PageID # 944-46.)

In making a determination of a claimant's RFC, the ALJ is required to consider medical source statements and all other evidence in the record, including the claimant's symptoms and

subjective allegations of pain.  20 C.F.R. §§ 404.1527(c), 404.1529 (2016); SSR 16-3p, 82 Fed.

Reg. 49462 (Oct. 25, 2017).  A claimant's statement that he is experiencing pain or other symptoms

will not, taken alone, establish that they are disabled; there must be medical signs and laboratory

findings which show the existence of a medical impairment that could reasonably be expected to

give rise to the pain and/or other symptoms alleged.  20 C.F.R. §§ 404.1529(a).  If the ALJ finds

that there is a medically determinable impairment that could reasonably be expected to produce

the claimant's symptoms, the ALJ must then assess the intensity and persistence of a claimant's

symptoms to determine how those symptoms limit the Plaintiff's capacity for work.[4]  *Id.* at §

404.1529(c)(1).

Here, the ALJ found that Plaintiff's impairments "could reasonably be expected to cause

the alleged symptoms" but then found that "the claimant's statements concerning the intensity,

persistence and limiting effects of these symptoms are not entirely consistent with the medical

evidence and the other evidence in the record . . . ."  (DN 12-2, at PageID # 74.)  Plaintiff argued

that his statements regarding the limitations imposed by his arthritis, degenerative disc disease,

PTSD, depression, and anxiety were supported by the record and linked to "objective findings."

(DN 17-1, at PageID # 945-46.)  As the undersigned already found above that the ALJ's mental

RFC was supported by substantial evidence, the undersigned need not separately address

---

[4] Plaintiff argued that the Court should apply SSR 16-3p, 81 Fed. Reg. 14166 (March 16, 2016), which rescinded SSR 96-7p, 61 Fed. Reg. 34483 (July 2, 1996) to Plaintiff's claims.  The undersigned agrees that SSR 16-3p applies because both the May 25, 2016 hearing on Plaintiff's claim and the ALJ's August 31, 2016 decision are after the March 28, 2016 effective date for SSR 16-3p.  *See* SSR 16-3p, 82 Fed. Reg. at 49462 (republished) (clarifying that the ruling applies to "determinations and decisions on or after March 28, 2016").  However, in his Fact and Law Summary, Plaintiff failed to specifically articulate what portion of SSR 16-3p the ALJ did not follow other than a vague reference that Plaintiff's own statements regarding pain were "credible."  (*See* DN 17-1, at PageID # 946.)  As the ALJ's decision does not analyze Plaintiff's statements regarding his limitations in terms of credibility but instead in terms of whether the claimant's statements were consistent with the case record, the undersigned finds the ALJ appropriately complied with SSR 16-3p.  *See* SSR 16-3p, 82 Fed. Reg. at 49464 ("In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.").

Plaintiff's claims regarding his anxiety, depression, and PTSD here.  Instead, the undersigned will address only the ALJ's findings regarding Plaintiff's back and knee pain.

The ALJ noted that Plaintiff had not generally received the type of medical treatment expected of a total disabled individual and that Plaintiff's treatment for his back and knee pain had been conservative in nature.  (DN 12-2, at PageID # 74.)  He noted that an MRI of Plaintiff's lumbar spine showed a severe back impairment, but as to Plaintiff's knee pain, "there [wa]s no imaging showing the nature of this impairment." (*Id.*)  However, the ALJ found that Plaintiff's knee arthritis was severe. (*Id.*)  The ALJ stated that despite Plaintiff's complaints, "the physical exams of record are typically within normal limits." (*Id.* at 74.)  The ALJ gave great weight to the opinion of consultative physical examiner Dr. Kimberly Togliatti-Trickett, who found that Plaintiff could perform sedentary or light work. (*Id.* at 78; DN 12-7, at PageID # 389.)  Based on this evidence, the ALJ limited Plaintiff to light work in his RFC.  (DN 12-2, at PageID # 72.)  This Court is required to deferentially review "an ALJ's determination of [a claimant's] limitations due to pain and other subjective symptoms." *Bunch v. Berryhill*, No. 1:17-CV-00195-LLK, 2018 WL 5283451, at *3 (W.D. Ky. Oct. 24, 2018).  While Plaintiff cited in his brief to what he terms "overwhelming evidence of debilitating symptoms," the undersigned finds the ALJ's treatment of Plaintiff's back and knee pain is supported by substantial evidence. *See Ulman v. Comm'r of Soc. Sec.,* 693 F.3d 709, 714 (6th Cir.2012) (citation omitted) (noting that "[a]s long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess," and reversal is not "warranted even if substantial evidence would support an opposite conclusion"). Accordingly, the undersigned finds no error in the ALJ's treatment of Plaintiff's subjective complaints.

### 6.       Traumatic Brain Injury and Listing 12.02

Plaintiff alleged that the ALJ erred in his determination that Plaintiff did not have a medically determinable traumatic brain injury ("TBI").  (DN 17-1, at PageID# 946.)  Instead, Plaintiff argued that the objective evidence indicated that Plaintiff had a TBI, and therefore, met the criteria for Listing 12.02.  (*Id.* at PageID # 948.)

As to the ALJ's finding regarding the existence of a TBI, the ALJ noted in his opinion that "the only notations of a TBI come from the claimant's reported history."  (DN 12-2, at PageID # 65.)  The ALJ then found that "there was no medically determinable traumatic brain injury nor is there treatment for such."  (*Id.*)  In support, the ALJ cited to a hospital record that noted that Plaintiff did not have a TBI because one was not shown in the records reviewed.  (DN 12-7, at PageID # 504.)  Later in his opinion, the ALJ likewise stated that "[b]ased on the overall objective evidence of record, there is no evidence of a medically determinable traumatic brain injury (such as a cognitive disorder) or of any residual cognitive deficit."  (*Id.* at 70.)  Plaintiff argued that "there was objective evidence in the record indicating that Plaintiff had a traumatic brain injury that caused him to continue to have residual cognitive deficits that affected his ability to work."  (DN 17-1, at PageID # 947.)  However, Plaintiff failed to produce a cite to any record in which he was diagnosed with a TBI.  Instead, Plaintiff merely cites to records that reference his own recitation of a prior TBI.  (DN 12-7, at PageID # 410 ("Reported medical history TBI."); *id.* at 494 ("Reports history of: . . . blunt head trauma . . . ."); *id.* at 769 ("He has a past history of . . . TBI . . . ").  As Plaintiff has failed to point to any record establishing he was diagnosed with a TBI, the undersigned concludes that the ALJ did not err in his finding regarding the existence of a TBI.

Plaintiff also contends the ALJ erred in failing to conclude that he met the requirements for Listing 12.02.  At Step Three of the five-step evaluation process, an ALJ considers whether the

claimant has an impairment that meets the criteria set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520, 416.920. "[A] claimant who meets the requirements of a listed impairment will be deemed conclusively disabled." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009). The claimant bears the burden of proving her impairment satisfies all of the specified criteria in a given listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

The ALJ specifically addressed whether Plaintiff met Listing 12.02 and found that Plaintiff did "not have a medically determinable traumatic brain injury or related cognitive dysfunction that requires evaluation under listing 12.02." (DN 12-2, at PageID # 71.) In support of his conclusion, the ALJ specifically rejected Plaintiff's argument that a significant drop in his IQ score, as reflected in a 2013 neuropsychological evaluation satisfied the Listing. (DN 12-6, at PageID # 339; DN 12-2, at PageID # 70.) The ALJ noted that in the same neuropsychological exam, the examiner found that Plaintiff demonstrated "variable motivation and effort" and concluded "the results of the cognitive testing likely are not a valid reflection of his current level of cognitive functioning." (DN 12-7, at PageID # 348; DN 12-2, at PageID # 70.) The ALJ also cited to the fact that Plaintiff performed semi-skilled to skilled work for eight to nine months. (DN 12-2, at PageID # 70.)

Plaintiff attempted to identify some evidence in the record in support of his position that he met the requirements of the Listing. However, the question before the undersigned is whether the Commissioner's decision is support by substantial evidence. *Gayheart*, 710 F.3d at 374; *Smith*, 893 F.2d at 108. If so, the undersigned may not even evaluate whether the record could support the opposite. Based on the undersigned's thorough review of the record, the undersigned finds the ALJ's decision regarding Listing 12.02 is supported by substantial evidence. Accordingly, the undersigned finds the ALJ did not err in his assessment of the existence of a TBI or whether Plaintiff satisfied Listing 12.02.

## III.   RECOMMENDATION

For these reasons, the undersigned RECOMMENDS that the final decision of the Commissioner be **AFFIRMED**.

cc:  Counsel of record

## <u>Notice</u>

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations.  A copy shall forthwith be electronically transmitted or mailed to all parties.  28 U.S.C. § 636(b)(1)(C).  Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal.  *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).